UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

Case No. 4:25-cv-13000

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

## I. INTRODUCTION

Plaintiff Robert H. filed a Title XVI application for supplemental security income on April 19, 2022, and Title II application for a period of disability and disability insurance benefits on April 28, 2022, each alleging disability beginning on July 20, 2021. (ECF No. 5–1, PageID.55, 54). The applications were denied at the initial administrative level on January 26, 2023, and upon reconsideration on October 20, 2023. (*Id.* at PageID.176–84, 188–94). Plaintiff then requested and later received a hearing before an Administrative Law Judge ("ALJ") on November 22, 2023. (*Id.* at PageID.140). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on July 24, 2025. (*Id.* at PageID.84–97, 20–22). The ALJ's decision

consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties consented to my jurisdiction. (ECF No. 8).

After careful scrutiny of the record and the Parties' briefs, and for the reasons below, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Summary Judgment* (ECF No. 10) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is **GRANTED**, and the administrative decision is **AFFIRMED**.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. When reviewing a case under the Social Security Act, the court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a public assistance measure providing another resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). That said, while they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for determining whether a claimant is disabled. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[1] Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 51 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age. (ECF No. 5–1, PageID.96). His education consists of at least a high school education. (*Id.*). Plaintiff's primary complaints include right shoulder tendinopathy and partial rotator cuff tear, right wrist deformity, cervical spondylosis, cervical laminectomy, and osteopenia. (*Id.* at PageID.89). In the past, Plaintiff worked as an industrial cleaner. (*Id.* at PageID.95).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful activity since July 21, 2021, the alleged onset date[.]" (*Id.* at PageID.89). At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): right shoulder tendinopathy and partial rotator cuff tear, right wrist deformity, cervical spondylosis, cervical laminectomy, and osteopenia. (*Id.*). But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of his impairments, met or medically equaled the severity of one of those listed in the applicable regulations. (*Id.* at PageID.91). Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC") as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can

> occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally balance on narrow, slippery, or erratically moving surfaces, stoop, and crouch, but never crawl or kneel; can frequently reach in all directions with the right upper extremity except never overhead; can frequently handle with the right upper extremity; can never push or pull with the right upper extremity; can never work around unprotected heights; can never have concentrated exposure to extreme cold or vibration; and must be permitted to alternate between sitting and standing every 20 minutes.

(*Id.* at PageID.91).

At **Step Four**, having consulted a VE, the ALJ concluded that Plaintiff has past work as an industrial cleaner but he "is unable to perform past relevant work as actually or generally performed." (*Id.* at PageID.96). The ALJ next concluded, at **Step Five**, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as garment sorter; folder; and marker. (*Id.* at PageID.96). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act during the relevant time frame. (*Id.* at PageID.97).

## V. DISCUSSION

In his motion for summary judgment, Plaintiff presents three arguments. Plaintiff's first assignment of error is the ALJ failed to evaluate his impairments in accordance with the listing impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (ECF No.10, PageID.832). Second, he asserts the ALJ failed to properly evaluate the medical source opinion evidence. (*Id.*). Finally, he asserts

the ALJ failed to properly evaluate his subjective symptoms and testimony. (*Id.*). Each of these arguments is addressed below.

### A. Whether the ALJ's Step Three Analysis of Listings 1.15, 1.16, and 1.18 Amounted to Reversible Error

Plaintiff's first assignment of error pertains to the ALJ's finding at Step Three. (ECF No.10, PageID.961–966). He argues the ALJ erred in his analysis of Listings 1.15, 1.16, and 1.18, because he did not discuss the relevant evidence, compare that evidence to the requirements of the listings, and explain his conclusions on those listings. The ALJ made the findings below with respect to the identified listings:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> The undersigned considered the listings at sections 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), and 1.18 (abnormality of a major joint(s) in any extremity). After careful consideration, the undersigned finds that the severity of the claimant's impairments does not meet any of the aforementioned listings because the medical evidence of record does not demonstrate any of the following:
>
> 1. A documented medical need for a walker, bilateral canes, or bilateral crutches (see or a wheeled and seated mobility device involving the use of both hands; or
>
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross

> movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or
>
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (1.15 and 1.18 only).

The Commissioner argues in response that remand is not warranted because Plaintiff did not meet his burden has not shown he met or equaled the criteria for any of the relevant listings. (ECF No. 12, PageID.987, 2026–27).

At Step Three of the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii). "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1525(c)(3)). The claimant bears the burden to prove that her condition meets or equals a listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). To do so, a claimant "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which

describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004).

"[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013)). An "ALJ should discuss the relevant listing, however, where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id*. (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990) (alteration in original). To demonstrate a "substantial question," the Sixth Circuit has explained that "[a] claimant must do more than point to evidence on which the ALJ could have based his finding." *Id*. (citing *Sheeks*, 544 F. App'x at 641–42). "Absent such evidence," an ALJ "does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

When the record demonstrates a "substantial question" as to whether a claimant meets or equals a listing, the Sixth Circuit has held that the ALJ must "evaluate the evidence, compare it to...the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Neace v. Comm'r of Soc. Sec.*, No. 22-5090, 2022 WL 20742559, at *3 (6th Cir. Sept. 14, 2022) (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

Such explanation is needed to demonstrate that the ALJ's findings were supported by substantial evidence. *Id.* But an ALJ need "not spell[ ] out every consideration that went into the step three determination," *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006), and the substantial evidence standard may be met where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion[s] at step three," *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). (citations omitted).

Here, the ALJ explained that he evaluated Plaintiff's impairments in the context of the listings and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (ECF No.5–1, PageID.91). In so finding, he specified that he had considered these listings: Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)); Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), and Listing 1.18 (abnormality of a major joint(s) in any extremity). (*Id.*). Aside from the three bullet points related an ambulatory device and use of upper extremities, the ALJ did not provide more analysis or explanation of his reasons for finding Plaintiff did not meet or equal the identified listings.

The aforementioned listings relate to musculoskeletal disorders. *See* 20 C.F.R. Part 404, Subpt. P, App 1., §§ 1.00, *et al.* To meet any of the three,

Plaintiff must show that the medical records document specified symptoms (paragraph A), signs on physical examination (paragraph B), findings on imaging and/or examination (paragraph C), *and* impairment-related limitations supported by specific medical documentation (paragraph D). *See* 20 C.F.R. Part 404, Subpt. P, App 1., §§ 1.15, 1.16, 1.18. For example, for the paragraph C requirements to be met, the record must contain imaging showing compromise of a nerve root in the cervical or lumbosacral spine (§ 1.15C), compromise of the cauda equina with lumbar spinal stenosis (§ 1.16C), or an anatomical abnormality of a major joint, as specified (§ 1.18C). For the requirements of paragraph D to be met, the record must contain medical documentation showing: (1) a medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, *and* a medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (for Listings 1.15 and 1.18) (3) an inability to use *both* upper extremities in that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. *See* 20 C.F.R. Part 404, Subpt. P, App 1., §§ 1.15D, 1.16D, 1.18D. Satisfying the D criteria based on a need for an assistive device requires a

"documented medical need" for the device, meaning "there is evidence from a medical source that supports [a] medical need for an assistive device..." *Id.*

Without addressing the specific requirements of any of the three identified Listings, Plaintiff argues that remand is required under Sixth Circuit caselaw because "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." (ECF No. 10, PageID.961) (citing *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. 2012).

Here, Plaintiff has presented specific medical evidence to raise a substantial question of whether he met or medically equaled the requirements of multiple Listings. Plaintiff has presented evidence of his medical encounters where he exhibited pain, reduced range of motion, decreased strength reflexes, and tests indicating an injury to a rotator cuff. Plaintiff has also presented relevant testimony from his hearing describing how his impairments affected his life. (ECF No. 10, PageID.963–66).

In presenting this argument, he does not directly address any of the specific requirements of the listings identified in his appeal. In particular, he does not explain how the imagery he describes compares to the paragraph C requirements in Listings 1.15, 1.16, or 1.18, and does not point to medical source evidence

documenting the medical need for assistive devices as contemplated in paragraph D.

Although each relevant listing contains specific requirements, as discussed above, there are some common elements. For example, evidence that Plaintiff relied on a walker, two crutches, two canes, or the assistance of another person to stand, maintain balance, and/or walk over a 12-month period or longer could meet the D criteria for the three musculoskeletal listings. The same would be true of an extreme limitation in both upper extremities—like an inability to handle, finger, reach, lift, or carry—or a similar inability to use one upper extremity along with a documented medical need for the use of a cane.

Here, even though the ALJ did not discuss his reasoning for finding Plaintiff did not meet or equal a listing at Step Three, he did discuss the following in his Step Four analysis:

> As for the claimant's statements about the intensity, persistence, and limiting effects of their symptoms, they are inconsistent because the objective medical evidence of record indicates greater physical functioning than described in the hearing testimony.
>
> As discussed above, the claimant underwent a C2 through C5 posterior cervical laminectomy and decompression in December 2020 (Exhibit 3F/82–83). One day after surgery, the claimant reported that his right arm pain and numbness in his hands had improved (Exhibit 3F/37).
>
> Treating source Susan Oshnock, PA, reported that the claimant's motor strength was 4+5 in the bilateral upper and lower extremities, and that he was ambulating well in the halls (*Id.*).

From January 2021–April 2022, the record contains no treatment records or other objective medical evidence.

In May 2022, the claimant saw Zoheb Backer, M.D., for pain in his right shoulder and wrist: “He states that around Christmas time while going down the stairs, his right knee gave out and while falling he grabbed the railing with his right hand which caused his shoulder and wrist to extend. He states since that event he has experienced swelling, pain in the shoulder and wrist joint.” (Exhibit 1F/11). The claimant also reported elevated blood pressure despite compliance with medication and feelings of instability in his right kneecap (*Id.*). Dr. Backer observed tenderness and limited range of motion on the claimant’s physical exam, but also observed normal gait and normal muscle strength and tone (Exhibit 5F/12). The claimant’s blood pressure was 156/90, but Dr. Backer observed normal heart rate and rhythm on the claimant’s exam, with no extremity edema (Exhibit 5F/9, 12). At a follow-up appointment, Dr. Backer reported unremarkable findings on the claimant’s physical exam, including normal gait, motor strength and tone, and cardiovascular findings (Exhibit 7F/16, 7/2022).

The claimant also saw orthopedist Chad Lasceski, M.D., in May 2022 for evaluation of right shoulder pain located at the bicep and superior shoulder and pain with external rotation (Exhibit 6F/32). Dr. Lasceski observed tenderness at the right parascapular and posterior lateral deltoid areas; forward elevation of 150° and external rotation at neutral – 45°; 4/5 rotator cuff strength; and positive Hawkins and Neer tests (Exhibit 6F/32-33). Otherwise, the claimant presented with intact sensation and muscle firing in all right upper extremity muscle groups and nerve distributions (*Id.*). Dr. Lasceski prescribed physical therapy and NSAID medication for the claimant and at a follow-up appointment in July 2022, the claimant reported his range of motion had improved, though he continued to have pain with certain movements (Exhibit 6F/25). A physical exam revealed improved shoulder elevation and external rotation and nontender AC joint but was otherwise similar to the prior exam (Exhibit 6F/28).

At a physical therapy evaluation in June 2022, the claimant told treating sources he had ambulated with a cane for the past six months

and needed assistance with grocery shopping, driving, and house cleaning due to his right shoulder injury (Exhibit 4F/18). An initial evaluation revealed reduced strength, reduced range of motion, and pain with motion in the right shoulder in most planes (Exhibit 4F/19). After one month of PT, the claimant exhibited improved strength and range of motion in his right shoulder but still had significant pain with movement with abduction and internal rotation (Exhibit 4F/44-45). In August 2022, treating sources noted that the claimant still had right should pain but "pain has decreased since starting therapy," with mild loss of strength and range of motion with external rotation (Exhibit 12F/46).

The claimant received a subacromial cortisone injection in September 2022 and subsequently reported six weeks of pain relief from this procedure (Exhibit 6F/19-24, 9/2022-11/2022). The claimant also reported he had completed physical therapy and had "regained right shoulder mobility and has increased (right upper extremity) strength," though he still reported pain and popping sensation in the joint (Exhibit 6F/20, 9/2022; see also 6F/16). By November 2022, Dr. Lasceski observed full strength in the claimant's right rotator cuff, no tenderness in the AC joint or bicipital groove, forward elevation of 170°, external rotation from neutral –60°, and negative Hawkins and Neer's tests (Exhibit 6F/19; compare with 6F/32-33).

The following month, however, the claimant reported he now had "pain with any type of movement whereas he previously only had with overhead activities" (Exhibit 6F/14, 12/2022)

The claimant's shoulder motion and right upper extremity strength remained stable, but Lasceski noted a return of positive impingement tests, bicipital groove tenderness, and 4/5 rotator cuff strength (*Id.*). The claimant also reported recent numbness and tingling in his right ring and small fingers (Exhibit 6F/10, 1/2023). However, a physical exam showed intact muscle firing and intact sensation in all muscle groups of the right hand (Exhibit 6F/10). Dr. Lasceski recommended activity modifications and wearing an elbow brace in addition to prescription NSAID and topical pain medication (Exhibit 6F/11).

In February 2023 the claimant saw Dr. Backer for "occasional unsteady gait which is intermittent" as well as continued right

shoulder pain (Exhibit 7F/8). Dr. Backer's exam revealed musculoskeletal tenderness and limited range of motion but intact coordination and cerebellum findings, with finger-to-nose intact and no tremor (Exhibit 7F/11).

Pain management specialist Mahmoud Sabbagh, M.D., saw the claimant in March 2023 for pain in the right shoulder, elbow, and wrist (Exhibit 8F/16). The claimant described his pain as sharp, achy, and constant, with 2/10 severity at best and 2/10 at worst (*Id.*). However, the claimant also indicated his pain did not interfere with his activities of daily living (Exhibit 16F/6). A physical exam revealed right shoulder pain at 110 degrees of flexion (Exhibit 8F/19). Otherwise, Dr. Sabbagh reported that the claimant appeared in no acute distress, with nonlabored respiration and normal heart rate and rhythm (Exhibit 8F/18-19). Dr. Sabbagh administered a steroid injection to the claimant's right glenohumeral joint steroid injection and recommended physical therapy and continued medication management with NSAID and topical pain medications (Exhibit 8F/19). This time, the claimant reported only minimal pain relief from the injection but also improved mobility after starting physical therapy (Exhibit 13F/5, 5/2023). Dr. Sabbagh reported similar observations on the claimant's physical exam (Exhibit 13F/7).

Internists Phu Do, M.D., and Rahaul Dhaliwal, M.D., treated the claimant from June 2023-February 2024 for general care (Exhibit 14F). In June 2023, Dr. Do wrote that the claimant ambulated with a cane and had tenderness in the back of his neck; otherwise, the exam was unremarkable (Exhibit 14F/16-17). The claimant complained of tinnitus in both ears and was reviewed for audiology, but no treating source reported difficulty communicating with the claimant or other serious limits in the claimant's hearing (Exhibit 14F/11, 6). At appointments in October 2023 and February 2024, neither physician reported seeing the claimant use a cane or other limits in his gait or coordination (Exhibit 14F/3-12).

No treating source reported observations of atrophy, acute weakness, or loss of fine or gross dexterity in the claimant's right upper extremity. As discussed above, the claimant exhibited reduced balance on heel-to-toe walk before the alleged onset date, and the claimant told treating sources he used a cane to ambulate. However,

> no treating source reported limits in the claimant's gait, station, or coordination from 2022–2024.

(ECF No. 5–1, PageID.92–94).

The ALJ also discussed the opinions of the state agency medical consultants. The ALJ noted:

> State agency medical consultant Edward Brophy, D.O., opined that the claimant could perform light work with no ladder climbing, frequent balancing, and occasional performance of other postural activities; occasional overhead reaching with the right upper extremity; avoid concentrated exposure to extreme cold and vibration; and avoid even moderate exposure to hazards (Exhibit 8E). This opinion is persuasive because it is consistent with the claimant's history of cervical degenerative disc disease requiring laminectomy and treating source observations of tenderness and limited motion in the right shoulder and neck. However, evidence received at the hearing level supports greater limits in manipulative and postural activities, though not to a disabling degree.
>
> The opinion of State agency medical consultant Frances Stockard, M.D., is not persuasive because it is inconsistent with evidence received at the reconsideration and hearing levels, which support greater restrictions in lifting/carrying, postural activities, and manipulative activities (Exhibit 4A).

(*Id.* at PageID.95).

After considering all the evidence described in his decision, the ALJ explained:

> the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record: In limiting the claimant to light work with occasional postural activities, the undersigned considered Dr. Brophy's opinion, physical exam reports from Drs. Backer and Lasceski, and laboratory evidence of degenerative disorders of the cervical spine and right shoulder. The

> undersigned also required a sit-stand option and precluded ladder climbing, crawling, and kneeling to address treatment notes reflecting complaints of episodic balance difficulty and knee pain. The undersigned considered the longitudinal history of right shoulder pain, weakness, and reduced range of motion in precluding overhead reaching, pushing, and pulling, and only frequent handling and reaching in other directions with the right upper extremity. The undersigned adopted Dr. Brophy's opinions regarding exposure to cold, vibration, and hazards because the claimant's upper extremity disorders would reasonably be expected to worsen with exposure to cold and vibration, and the claimant's chronic pain and limited upper extremity mobility decreases his safety around hazards.

(*Id.* at PageID.95).

Returning to applicable Sixth Circuit caselaw, the Court finds first that Plaintiff has failed to show a "substantial question" as to whether he could meet or equal Listings 1.15, 1.16, or 1.18 by "point[ing] to specific evidence that demonstrates he reasonably could meet or equal *every requirement* of" any of those listings. *See Smith-Johnson*, 579 F. App'x at 432. (emphasis added). His references to imagery without specifying how that imagery is equivalent to the paragraph C requirements, and his discussion of limitations in the use of his extremities without explaining how they equate to the very significant limitations described in paragraph D, amount to no more than a "mere toehold in the record on an essential element of the listing," which is insufficient to raise a "substantial question" under *Sheeks*, 544 F. App'x at 642. Because Plaintiff did not raise a substantial question as to whether he could meet or equal every element of any of

the relevant listings, the ALJ's cursory evaluation of those listings at Step Three was not reversible error. *See Smith-Johnson*, 579 F. App'x at 433.

Further, after considering the ALJ's discussion of the subjective complaints, medical evidence, treatment records, medical evidence, and his RFC findings at Step Four of the sequential analysis, as outlined above, the Court also finds the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three" that Plaintiff did *not* meet or equal Listings 1.15, 1.16, or 1.18. *See Forrest*, 591 F. App'x at 366. Particularly given Plaintiff's failure to demonstrate a "substantial question" as to whether the specific listings were met or equaled, the Court finds Plaintiff also has not met his burden to show that the ALJ's Step Three findings lacked the support of substantial evidence in the context of the ALJ decision as a whole.

For all the reasons set forth above, the Court finds that Plaintiff has not met his burden to demonstrate that the ALJ's findings at Step Three amounted to reversible error. Accordingly, the Court finds his first assignment of error lacks merit.

### B. The ALJ Properly Evaluated the Supportability and Consistency of Plaintiff's Treating Source Opinions

In his second assignment of error, Plaintiff argues the ALJ erred by failing to "properly evaluate the medical source opinion evidence." (ECF No. 10, PageID.966–75). Plaintiff's assignment of error is directed at the ALJ's evaluation

of the medical opinion of Phu Do, M.D. The Commissioner argues in response the ALJ properly determined that Dr. Do's opinions were unpersuasive, discussing both supportability and consistency. (ECF No. Doc. 12, PageID.991–96).

1. Framework for Assessing RFC and Medical Opinion Evidence

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess the "residual functional capacity based on all the relevant evidence in [the] case record," *id.*, such as medical history; medical signs and laboratory findings; effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; symptoms; evidence from attempts to work; need for a structured living environment; and work evaluations, *see* SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996).

"The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician," *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Accordingly, an ALJ is "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Id*. Even where an opinion was given great weight under prior regulation, the Sixth Circuit held "there [was] no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor [was] the ALJ required to adopt the state agency psychologist's limitations

wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Under applicable regulations, ALJs need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(a); *see Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024) (quoting 20 C.F.R. § 404.1520c(a)). But they must evaluate the "persuasiveness" of medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5)" of the regulation. 20 C.F.R. § 404.1520c. Those five factors include supportability, consistency, relationship with the claimant, specialization, and other factors; but the most important factors are supportability[2] and consistency.[3] 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 404.1520c(c)(1)-(5). ALJs must therefore explain how they considered consistency and supportability but need not explain how they considered other factors. *See* 20 C.F.R. § 404.1520c(b)(2). In reviewing an ALJ's medical opinion analysis, courts must

[2] "Supportability" is the extent to which a medical source's own objective findings and supporting explanations substantiate or support the findings in his or her opinion. *See* 20 C.F.R. § 404.1520c(c)(1)

[3] "Consistency" is the extent to which a medical source's opinion findings are consistent with the evidence from other medical and nonmedical sources in the record. *See* 20 C.F.R. § 404.1520c(c)(2)

consider whether the ALJ: considered the full record in assessing the persuasiveness of the opinion; appropriately articulated her reasons for finding the opinion unpersuasive; and made findings supported by substantial evidence. *See* 20 C.F.R. § 404.1520c (governing how ALJs consider and articulate findings re: medical opinions); 20 C.F.R. § 404.1520(e) (findings re: RFCs will be "based on all the relevant medical and other evidence" in the case record); *see also Blakley*, 581 F.3d at 405.

2. <u>The ALJ Properly Evaluated the Supportability and Consistency of Dr. Phu Do's Medical Opinions</u>

Plaintiff asserts "to hold that an opinion is unsupported by objective evidence while omitting discussion of objective evidence which would support the opinion amounts to selective cherry-picking of the record, which is error." (ECF No. 12, PageID.973).

In assessing the persuasiveness of Dr. Do's medical opinions, the ALJ explained:

> In June 2023, Dr. Do opined that the claimant needed a cane to ambulate, could stand/walk less than two hours in an eight-hour workday, and was likely to be off-task 25% of the workday or more due to his symptoms (Exhibit 11F). This opinion is not persuasive because it is only partly supported by Dr. Do's exam reports and inconsistent with the treatment notes and observations of Drs. Backer and Lasceski, which demonstrate chronic right shoulder impairment but no significant limits in gait, balance, or overall motor functioning.

(ECF No. 5–1, PageID.95). Thus, the ALJ clearly articulated her reasons for finding Dr. Do's medical opinions unpersuasive and specifically identified supporting evidence. Beginning with "consistency"—i.e., the extent to which the opinion findings were consistent with evidence from other medical and nonmedical sources—the ALJ explained that Dr. Do's restrictive limitations were "inconsistent with the treatment notes and observations of Drs. Backer and Lasceski, which demonstrate chronic right shoulder impairment but no significant limits in gait, balance, or overall motor functioning." (*Id.*). Turning to "supportability"—i.e., the extent to which Dr. Do's objective findings and supporting explanations substantiate or support the findings in his opinion—the ALJ found that Dr. Do's opinions "[were] partly supported by Dr. Do's exam reports." (*Id.*).

A review of examination findings in the treatment records from Dr. Do that the ALJ referenced in his decision bears out this conclusion. For example, other than ambulating with a cane, and tenderness in Plaintiff's neck, examination findings were unremarkable at a treatment visit on June 13, 2023. (*Id.* at PageID.935–36). And at a February 6, 2024, examination, findings were unremarkable except for difficulty hearing and a callus on Plaintiff's left big toe. (*Id.* at PageID.925). The ALJ thus adequately and accurately discussed the supportability of Dr. Do's medical opinions.

The ALJ acknowledged and considered Dr. Do's limitations when he concluded that Dr. Do's opined limitations were not persuasive. (*Id.* at PageID.95). The ALJ articulated his reasons for not adopting Dr. Do's opined limitations, and was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

For the reasons set forth above, the Court finds the ALJ adequately explained his reasons for finding Dr. Do's medical opinions unpersuasive and further finds that Plaintiff has not met his burden to show that the ALJ's findings lacked the support of substantial evidence. Accordingly, the Court finds the second assignment of error lacks merit.

### C. The ALJ Properly Applied SSR 16-3p

In his third assignment of error, Plaintiff argues that the ALJ failed to properly evaluate his symptoms under SSR 16-3p and erred in by using "boilerplate language" to reject his subjective complaints. (ECF No. 10, PageID.975–76). Plaintiff further argues that the ALJ merely summarized Plaintiff's medical reports rather than creating a logical bridge between the evidence and his findings. (*Id.* at PageID.976–77). The Commissioner responds that the ALJ complied with SSR 16-3p by discussing and considering the relevant

evidence before concluding that Plaintiff's symptoms were not as disabling as alleged. (ECF No. 12, PageID.996–1002).

1. Legal Standard for Evaluation of Subjective Symptoms

As a general matter, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *1.

Reviewing courts must afford an ALJ's credibility determination great weight and deference, particularly because the ALJ had the opportunity of hearing a witness's testimony. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488–89 (6th Cir. 2005) (citation omitted). The Court is limited in assessing whether the ALJ's explanations for discrediting the claimant's allegations are reasonable and supported by substantial evidence in the record. *Id.* The evaluation of a claimant's subjective complaints rests with the ALJ and should not be disturbed absent "compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013).

Under the two-step process used to assess the limiting effects of a claimant's symptoms, a determination is first made as to whether there is an underlying medically determinable physical or mental impairment that could reasonably be

expected to produce the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *3; *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). If that requirement is met, the second step is to evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *4; *Rogers*, 486 F.3d at 247. There is no real dispute that the first step is met in this case, so the discussion will focus on the ALJ's compliance with the second step.

2. The ALJ Appropriately Evaluated Plaintiff's Subjective Complaints

In evaluating the intensity and persistence of the claimant's symptoms, an ALJ should consider objective medical evidence, subjective complaints, prior work records, and information from medical and non-medical sources. SSR 16-3p, 2017 WL 5180304, at *5–8; 20 C.F.R. § 404.1529(c)(3). Relevant factors include daily activities, types and effectiveness of medications, treatments to address symptoms, and other factors concerning functional limitations due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 404.1529(c)(3). An ALJ need not discuss all factors he considers, only those he finds pertinent to the case. SSR 16-3p, 2017 WL 5180304, at *10–*12.

A review of the ALJ's written decision reveals the ALJ followed the proper analysis under the regulations, agency policy, and relevant case law in assessing Plaintiff's subjective symptoms. In this case, the ALJ stated the two-step process:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(ECF No. 5-1, PageID.91–92). Then, the ALJ described Plaintiff's subjective complaints and hearing testimony as follows:

> The claimant testified that he regained some strength undergoing surgery in 2020 but he could not keep up with the demands of his job, including lifting 50 pounds and mopping. As noted above, the claimant received emergency treatment for right wrist and shoulder pain in 2022; the claimant testified that his knee gave and he started to fall backwards, and he injured his wrist when he grabbed the rail to stop his fall. Reportedly, the claimant continues to have constant pain in his right shoulder and wrist, even when he takes pain medication. He also testified that he continued to have pain and limited motion in his neck even after surgery. The claimant also reported difficulty with standing and walking due to feeling pins-and-needles in his feet. Allegedly, the claimant must sit after 20 minutes of walking due to this symptom and can only stand in one place for 10 minutes before his knees start hurting. The claimant also testified he could not lift more than 10 pounds at a time due to a history of hand injuries.

(*Id.* at PageID.92). What follows, then, is a full analysis of the medical evidence related to Plaintiff's treatment history and frequency of Plaintiff's symptoms as required by the regulations. *See* 20 C.F.R. § 404.1529(c)(ii), (v). The ALJ then adopted an RFC that limited Plaintiff to light work with occasional postural activities. (*Id.* at PageID.92).

After discussing Plaintiff's medical records, activities, and reported symptoms, the ALJ summarized his findings related to Plaintiff's subjective reports and RFC as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record: In limiting the claimant to light work with occasional postural activities, the undersigned considered Dr. Brophy's opinion, physical exam reports from Drs. Backer and Lasceski, and laboratory evidence of degenerative disorders of the cervical spine and right shoulder. The undersigned also required a sit-stand option and precluded ladder climbing, crawling, and kneeling to address treatment notes reflecting complaints of episodic balance difficulty and knee pain. The undersigned considered the longitudinal history of right shoulder pain, weakness, and reduced range of motion in precluding overhead reaching, pushing, and pulling, and only frequent handling and reaching in other directions with the right upper extremity. The undersigned adopted Dr. Brophy's opinions regarding exposure to cold, vibration, and hazards because the claimant's upper extremity disorders would reasonably be expected to worsen with exposure to cold and vibration, and the claimant's chronic pain and limited upper extremity mobility decreases his safety around hazards.

(*Id.* at PageID.95). The ALJ's decision thus considered the factors set forth in SSR 16-3p, contained "specific reasons for the weight given to the individual's symptoms," and made findings that were "consistent with and supported by the

evidence." SSR 16-3p, 2017 WL 5180304, at *10–11. Reading the decision as a whole, the undersigned finds he "clearly articulated [his reasoning] so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." (*Id.*). The Court therefore concludes that the ALJ complied with SSR 16-3p when he found the "intensity, persistence and limiting effects" of Plaintiff's symptoms was not "entirely consistent" with the record. (*Id.* at PageID.92). Ultimately, as noted above, the ALJ's evaluation of Plaintiff's subjective complaints should not be disturbed absent "compelling reasons." *Ritchie*, 540 F. App'x at 511. The Court finds no compelling reasons here. As much as Plaintiff is asking for the Court to re-weigh the evidence, resolve conflicts in evidence, or decide questions of credibility, the Court is prohibited from doing so. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

For the reasons explained above, the Court finds Plaintiff has not met his burden to show that the ALJ erred in evaluating his symptoms or that his analysis lacked the support of substantial evidence. Accordingly, the Court finds the third assignment of error lacks merit.

## VI. CONCLUSION

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, Plaintiff's

*Motion for Summary Judgment* (ECF No. 10) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. The Clerk of Court shall close the file.

**IT IS SO ORDERED**.

Date: September 18, 2026

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge